**Date signed April 12, 2004**



*James F. Schneider*
**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| JACOB FRAIDIN, | * | Case No. 92-52338-JS |
| Debtor | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

***MEMORANDUM OPINION ON REMAND FROM THE U.S. DISTRICT COURT***

The debtor appealed the approval by this Court of a settlement between Michael G. Rinn, the Chapter 7 trustee and André R. Weitzman and Sheldon H. Braiterman, creditors. The U.S. District Court [Nickerson, D.J.], remanded the matter to this Court for a more complete record of the reasons for approving the settlement.

The debtor's objection to the settlement was summarily overruled because, in this Court's opinion, the debtor lacked standing to object to the settlement (and hence, to appeal the approval of the settlement). *Cf. Willemain v. Kivitz,* 764 F.2d 1019 (4th Cir. 1985). In addition, the failure of the debtor to obtain a stay of the decision approving the settlement pending appeal, rendered the instant appeal moot.

*Development Co. of America v. Adamson Co., Inc. (In re Adamson Co. Inc.)*, 159 F.3d 896 (4th Cir. 1998).

Nevertheless, in conformity with the command of the District Court, this Court herewith supplements the record, as follows:

The settlement between the trustee and the creditors received the approval of this Court because it was found to be in the best interests of the debtor's estate and its creditors. This conclusion is obvious and beyond cavil when one considers the unique facts of this case.

The instant case is one of the oldest bankruptcy cases in this district, having begun its tortuous history in the U.S. Bankruptcy Court for the District of Columbia, where it was filed as a Chapter 11 proceeding by the debtor on August 9, 1991. The case was transferred to the District of Maryland by order [Teel, B.J.], dated March 17, 1992. On December 29, 1993, this Court ordered the appointment of a Chapter 11 trustee [P. 217].[1]

---

[1] In an unreported opinion in the case of *Fraidin v. Weitzman (In re Fraidin),* 1994 Westlaw 687306, decided December 9, 1994, the Fourth Circuit U.S. Court of Appeals made the following statements in upholding this Court's appointment of a Chapter 11 trustee:

> After Fraidin filed for protection under Chapter 11 of the Bankruptcy Code, two creditors with outstanding judgments against Fraidin moved for the appointment of a trustee. At the conclusion of a

On April 13, 1994, the U.S. Trustee appointed Deborah Hunt Devan, Esquire, as Chapter 11 trustee.  On April 11, 1995, this Court converted the case to a Chapter 7 proceeding.  On April 12, 1995 Michael G. Rinn, Esquire, was appointed Chapter 7 trustee.[2]

---

two-day hearing, the bankruptcy court stated that it was appointing a trustee because it had "absolutely no confidence in the debtor in terms of his capacity to honestly administer his own Chapter 11 bankruptcy."  The bankruptcy court based its decision on what it called "a multitude of factors," one of which was pre-petition dishonesty.  Fraidin is a convicted felon, having been found guilty of theft while acting as a foreclosure trustee.  *See Fraidin v. State,* 85 Md. App. 231, 583 A.2d 1065, *cert. denied,* 322 Md. 614, 589 A.2d 57 (1991).  [Footnote: The Maryland Court of Special Appeals wrote: "The permissible picture emerges of Fraidin as an extremely clever manipulator of complicated commercial transactions who . . . at least had avarice in his heart.  To feed that avarice, he created at-times labyrinthine confusion.  He then sought to exploit that confusion to his own advantage."  *Fraidin,* 583 A.2d at 1081.]  More recently, Fraidin was found liable in a civil action for tortious interference with contract and civil conspiracy and was ordered to pay $1.5 million in punitive damages.  Also, the bankruptcy judge found that Fraidin had used aliases as late as 1986, but did not disclose those names as required on the bankruptcy petition.  Moreover, the bankruptcy court found that Fraidin had no credibility, given his "evasive, self-serving, unclear, and obviously not forthcoming" testimony during the hearing. . .

*Id.* at 1.

[2]The Fourth Circuit affirmed the conversion to Chapter 7 in an unreported opinion styled *Fraidin v. Weitzman (In re Fraidin),* 1997 Westlaw 153826, decided April 3, 1997, in which it stated:

In order to convert a case from Chapter 11 to Chapter 7, a

In the case of *Rinn v. Fraidin (In re Fraidin),* 257 B.R. 437 (Bankr. D. Md. 2001), this Court held that the debtor's transfers of money to children, less than one year prior to the commencement of bankruptcy case, at which time debtor's total liabilities exceeded his assets by in excess of $2.5 million, were avoidable by the Chapter 7 trustee as being actually and/or constructively fraudulent as to creditors. Essential to that decision was the finding that the debtor was insolvent at the time he gave $10,000 to each of the defendants for no consideration. The Court further found that:

> The schedules filed by the debtor under penalties of perjury in his bankruptcy case showed that on the petition date, August 9, 1991, his liabilities substantially exceeded his assets. Total assets, both real and personal, were reported to be $1,163,618.28, against total liabilities reported in the amount of $3,907,287. . .

*Id.* at 2.

---

bankruptcy court must first determine that there is cause for the conversion. 11 U.S.C. § 1112(b); *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242-43 (4th Cir. 1994). . .

The bankruptcy court relied upon Fraidin's inability to effectuate a plan as its basis for ordering conversion, and the record substantiates that finding. The trustee explained at length that Fraidin would not be able to obtain confirmation of a reorganization plan. Indeed, Fraidin has never submitted a plan for approval. The bankruptcy court did not abuse its discretion in converting the case to a Chapter 7 proceeding.

The debtor's well-documented career of outrageous misconduct, dishonesty and fraud and the artifices to which the debtor has resorted in the past to prevent his creditors from being paid would, standing alone, provide enough of a basis to disbelieve his testimony in the present suit. However, there is even more new material to justify such a conclusion: his inability to present a logical explanation surrounding the suspicious circumstances of the fraudulent transfers outlined by the trustee in these complaints; the propensity of the debtor and the defendants to "forget" various unusual events that honest people would normally remember; the debtor's evasive and contradictory answers provided at the trial of these complaints and his shifty and combative demeanor while on the witness stand compel the conclusion that Mr. Fraidin's testimony is unworthy of belief.

It is evident from the debtor's schedules which he filed under oath that he was insolvent when he filed his bankruptcy petition. Mr. Fraidin's failure to pay his debts is a added proof of his insolvency. All of the transfers complained of by the trustee occurred after suit was brought against the debtor, and in the case of the $60,000 transfer to Brian Fraidin, after a substantial judgment was entered against him. The timing of the transfers in relation to the litigation against the debtor makes the transfers classic fraudulent conveyances. . .

The record speaks for itself quite clearly that Mr. Fraidin intentionally hindered, delayed and defrauded creditors by making these transfers to his children, the defendants. Accordingly, the complaints will be granted and judgments will be entered against the defendants in favor of the Chapter 7 trustee.

*Id.* at 441.

In the later opinion of *Rinn v. Fraidin (In re Fraidin),* (Bankr. D. Md. 2003), this Court held that the trustee's evidence presented at a hearing on damages on a turnover complaint filed by the trustee against the debtor was sufficient to support an award of

5

damages in favor of the estate in the amount of $1,659,077, plus attorney's fees and costs of $4,179.00, plus interest at the rate of 5.58% from April 9, 1997.

On April 9, 1997, the trustee filed that complaint against the debtor to avoid and recover fraudulent transfers, postpetition transfers and the turnover of property. On May 20, 1997, a scheduling conference was held at which time counsel for the trustee appeared but the defendant did not. On May 22, 1997, the defendant filed a motion to dismiss. On May 1, 1998, the defendant filed a motion to disqualify plaintiff's counsel. The motion to disqualify was denied by order dated May 19, 1998 [Teel, B.J.]. By order entered July 21, 1998, the motion to dismiss was denied, the trustee was provided 90 days to conduct discovery of the defendant and the plaintiff was ordered to file a more definite statement within 30 days.

On September 9, 1998, the trustee filed a motion to compel discovery and to deem facts admitted by Fraidin. On November 16, 1998, the trustee filed a second motion to compel discovery.

On April 14, 1999, a hearing was held on the motions to compel discovery and they were granted by Judge Keir by order [P. 34] entered on April 29, 1999. On May 14, 1999, the trustee filed a third motion to compel discovery. On May 26, 1999, the trustee filed a fourth motion to compel discovery. A telephonic hearing was conducted by this Court while the deposition was in progress during which Mr. Fraidin had

refused to answer certain questions put to him by trustee's counsel. This Court overruled Mr. Fraidin's objections to the questions and ordered him to answer them. By order [P. 39] entered June 4, 1999, this Court reduced to written order its oral directive to the debtor to answer the questions posed at the deposition in writing within twenty days, upon penalty of having the instant complaint granted against him. The debtor refused to respond to discovery requests, including refusing to attend duly scheduled depositions. When he did attend such a deposition, he improperly declined to answer numerous questions that this Court commanded him to answer. As a result, on January 8, 2001, this Court entered an order granting default judgement [P. 42], upon the trustee's Suggestion of Contempt Under Order Directing Jacob Fraidin to Answer All Questions Posed at Depositions. On March 14, 2001, this Court conducted a hearing on the trustee's damages, and determined that the trustee's claim against the defendant should be allowed in the amount of $1,659,077, plus attorney's fees and costs of $4,179.00, plus interest at the rate of 5.58% from April 9, 1997. On April 4, 2001, a judgment [P. 50] was entered against the defendant in that amount.

    The U.S. District Court (Nickerson, D.J.) affirmed, but the Fourth Circuit reversed and remanded in the unreported opinion of *Fraidin v. Rinn (In re Fraidin),* 34 Fed. Appx. 932, 2002 WL 1025092, decided May 22, 2002. The reason for the reversal was that after the trustee's complaint was granted against the debtor upon the

debtor's contemptuous refusal to respond to discovery, this Court held a hearing on the plaintiff's motion, which unfortunately was denominated "Ex parte Motion for Damages," which the debtor failed to attend. The reversal was based upon the failure of this Court to give Fraidin an opportunity to produce evidence on the issue of damages, an anomalous result because the reason the complaint was granted against him was his refusal to provide discovery. (The propriety of the January 5, 2001, order, that entered the default judgment against Fraidin, was not the subject of the appeal to the Fourth Circuit because his appeal from that order was dismissed with prejudice by the District Court and the dismissal was not appealed further.)

    After remand, this Court conducted a second hearing on damages on January 13-14, 2003, to which the debtor was invited to attend and which he in fact did attend. This second hearing permitted Fraidin to produce the very evidence he presumably withheld from the trustee in an attempt to dispute the trustee's claim for damages. It should also be noted that the original hearing on remand scheduled by this Court for November 6, 2002, was continued at the debtor's request so that he might obtain legal counsel to represent him. When the hearing was called on January 13, 2003, the debtor appeared without counsel and requested another postponement so that he might obtain subpoenas for the testimony of various representatives of the Department of Justice, which this Court denied. Fraidin claimed that he wanted an accounting from the trustee

8

for funds Fraidin collected and turned over to him. However, the trustee did not claim that those collections were not turned over to him. His claim for damages was based upon four discrete categories of funds that were neither turned over to the trustee nor accounted for by Fraidin. In denying the debtor's motion for a continuance, this Court noted on the record that the debtor had 67 days, from the date of the November 6, 2002, hearing to subpoena these witnesses, but did not do so under the very eve of the January 13, 2003, hearing.

The defendant attempted to use the hearing on damages to retry the complaint, including his liability which had already been established, and raised all manner of irrelevant and argumentative issues. Nevertheless, this Court attempted to keep the damages issue the focus of the two-day hearing on remand by constantly reminding him that his liability to the trustee was not at issue, only the amount of damages based on that liability.

The trustee, Michael G. Rinn, testified as to the basis for his damage claim in the amount of $1,659,511, which the trustee claimed is unaccounted for by the debtor and which is missing from the estate. Mr. Rinn testified that he reviewed the books and records of the estate, including the debtor's business records, exhibits from other proceedings in the State court and the bankruptcy court in this case, including transcripts of hearings, and that he conducted an independent investigation of the

debtor and his business dealings upon which the instant complaint was based. The amount of damages has four separate components: (1) cash in the amount of $595,435, which the debtor scheduled under penalties of perjury as cash on deposit when the bankruptcy case was filed; (2) funds received by the debtor from the decedent's estate of the debtor's mother in the amount of $289,575, and never accounted for by the debtor; (3) receipts from Barclay Mortgage Company in the amount of $391,426; and (4) the debtor's 1989-90 interest income reported on his tax returns in the amount of $467,191. These figures total $1,743,627, against which the trustee credited the debtor the amount of $84,115, representing monies received by the estate attributable to the four categories, leaving a net amount owed to the debtor's bankruptcy estate of $1,659,511. In addition, the trustee testified that he is indebted to his counsel for services rendered incident to this complaint in the amount of $4,179.

The trustee's testimony was corroborated by documentary evidence submitted at the hearing, including trustee's counsel's affidavit of counsel fees, copies of schedules, certificates of deposit, T-bill rates, monthly operating reports and records of the receivership obtained against the debtor's company, Pacific Mortgage Company.[3]

---

[3] The following exhibits were admitted into evidence at the hearing:

Trustee's Exhibit No. 1: Fraidin's bankruptcy schedules that he filed under penalty of perjury; Trustee's Exhibit No. 2: an exemplified copy of the final judgment

Cross-examination of the trustee by the debtor did not cause the trustee to alter his direct testimony as to the amount of damages. The trustee did not deny that he received more than $84,000 that the debtor had collected from various other sources not attributable to any of the four categories that the trustee previously enumerated. He disputed Fraidin's claim that he ever received more than $300,000 from Fraidin.

André Weitzman, Esquire, testified regarding his postjudgment collection efforts against Fraidin in his State court litigation to the effect that Fraidin never produced bank records. He testified that he was appointed substitute personal representative for the decedent's estate of Corinne Fraidin, the debtor's mother, and that Fraidin received a distribution from that estate in the amount of $289,575 on April 3, 1991. He determined the amount Fraidin received by examining cancelled checks from the decedent's estate account. The bankruptcy estate never received any payments from

---

order entered in *Rinn v. Pacific Mortgage Inv. Group,* Adv. Pro. No. 97-5511, which enjoined the debtor and his agents from transferring and concealing assets of the debtor's various business entities and appointing Mr. Rinn as their receiver; Trustee's Exhibit No. 3: an exemplified copy of the order of this court that substantively consolidated the receivership over the debtor's business entities with the debtor's bankruptcy case; Trustee's Exhibit No. 4: Money rates published in *The Wall Street Journal* dated January 3, 1989; Trustee's Exhibit No. 5: Money rates published in *The Wall Street Journal* dated Dec 29, 1998; Trustee's Exhibit No. 6: a binder containing monthly operating reports filed by Fraidin during the pendency of his Chapter 11 proceeding; and Trustee's Exhibit No. 7: a verified statement of the trustee's attorney's fees, pursuant to the January 8, 2001, order of this Court, in the amount of $4,179.

Fraidin from any of those funds, although Weitzman received $102,552 that he recovered against Fraidin's sister on a judgment.

Fraidin testified that he opened debtor in possession accounts on the advice of counsel at the outset of the case. The monies were invested in high-yield mortgage accounts, not in certificates of deposit. Each month, according to him, operating reports were duly filed with the U.S. Trustee. He continued in control of his financial affairs until the appointment of the Chapter 11 trustee. With her approval, he continued to collect all monies due from his various mortgages. When the case was converted to Chapter 7 and the trustee was appointed, Fraidin continued to make collections and turn them over to the trustee. Fraidin claimed he did everything the trustee ordered him to do. He attempted to offer into evidence a number of letters that amounted to self-serving declarations, which were excluded. However, very tellingly, Fraidin declined to testify under oath that what he had said in his opening statement was truthful. He acknowledged that he has not filed income tax returns for himself and his various business entities and could not remember the last occasion when he did so.

The trustee's counsel cross-examined Fraidin about his failure to provide answers to questions at his deposition on May 22, 1999, and read into the record numerous questions that Fraidin refused to answer and account for estate funds and proceeds.

This Court was satisfied from all of the testimony and documentary evidence adduced at the two-day hearing that the debtor is indebted to the Chapter 7 trustee on behalf of the bankruptcy estate in the amount of $1,659,077, plus attorney's fees and costs of $4,179.00, plus interest at the rate of 5.58% from April 9, 1997. *Rinn v. Fraidin (In re Fraidin),* 304 B.R. 239 (Bankr. D. Md. 2003).

The conversion of the instant bankruptcy case from Chapter 11 to Chapter 7 and the appointment of Michael G. Rinn as Chapter 7 trustee placed Fraidin's case in a liquidation mode and divested him of any interest or control over the bankruptcy estate. The decision to convert was based upon a finding of cause and then made pursuant to the discretion of the bankruptcy court. The Court determined that such action comported with the best interests of the estate and its creditors. 11 U.S.C. § 1112(b).

This Court explained its decision to convert the case to Chapter 7 as follows:

> [I]t seems to me that looking at this case objectively, the only result that will finally give creditors some benefit is the conversion of this case to Chapter 7. I don't want to take Mr. Fraidin's livelihood away from him, and I don't even think that a Chapter 7 will necessarily do that. I think it may be in his own interest to be converted to a Chapter 7. . . . He may do better in a Chapter 7 by having some of these punitive damages dealt with in a liquidation where he gets a bankruptcy discharge, assuming that he gets a discharge. And I have to assume that that's what's going to happen here. . . .

*Fraidin v. Weitzman (In re Fraidin)*, 188 B.R. 529, 531 (D. Md. 1995).

13

André Weitzman and Sheldon Braiterman are judgment creditors of Fraidin. On January 30, 1991, they obtained judgments against him and his various corporations in the Circuit Court for Baltimore City in amounts exceeding $3 million. The amount of the judgments was later reversed on appeal. *Fraidin v. Weitzman,* 93 Md. App. 168, 611 A.2d 1046 (1992). On remand, the Circuit Court entered reduced judgments against Fraidin in favor of Weitzman and Braiterman in the respective amounts of $1,250,000 and $250,000. On September 6, 1996, this Court determined the judgments against Fraidin to be nondischargeable in bankruptcy. *Weitzman v. Fraidin,* Adv. Pro. No. 95-5335, [P. 25].

It is abundantly clear from the foregoing exhaustive record which this Court has once again recounted that Fraidin has used every devious and dishonest means within his power to effectively prevent the trustee and the creditors from getting their hands on his assets and has frustrated their attempts to satisfy their claims against him and the various entities under his dominion and control. The instant settlement before the Court will have the effect of satisfying the very substantial claims of Weitzman and Braiterman against the bankruptcy estate in exchange for a nominal payment by the trustee in the amount of $20,000, while recognizing the right of the claimants to proceed directly against the debtor outside of the bankruptcy court to satisfy their nondischargeable judgments against his non-exempt, non-estate property, which,

contrary to the debtor's assertion, is not protected under any circumstances by provisions of the automatic stay of 11 U.S.C. § 362. It will also enable the trustee, at long last, to finally close the instant bankruptcy case, for the good of both the debtor and his creditors. Such a conclusion will redound as well to the public good, there being a public interest in the long-overdue closing of this case which has for so many years consumed significant judicial resources of this Court, as well as those of both the U.S. District Court for the District of Maryland and the Fourth Circuit U.S. Court of Appeals.

      WHEREFORE, for the foregoing reasons, this Court reaffirms its approval of the settlement between the trustee and the said creditors.

cc: Jacob Fraidin
3406 Fielding Road
Baltimore, Maryland 21208

Paul-Michael Justin Sweeney, Esquire
Linowes & Blocher, L.L.P.,
1010 Wayne Avenue
Silver Spring, Maryland 20910

Michael G. Rinn, Esquire
Chapter 7 Trustee
111 Warren Road, Suite 4
Cockeysville, Maryland 21030

Office of the United States Trustee
300 West Pratt Street, Suite 350
Baltimore, Maryland 21201